**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case # 11-81196-CIV-RYSKAMP/VITUNAC**

SCOTT CHAPMAN

      Plaintiff,

vs.

ABBOTT LABORATORIES

      Defendant.

_____/

**DEFENDANT ABBOTT LABORATORIES' MOTION TO DISMISS**
**PLAINTIFF'S COMPLAINT AND SUPPORTING MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant Abbott Laboratories

("Abbott") hereby moves to dismiss the Complaint of plaintiff Scott Chapman on the grounds

that the Complaint fails to state a claim upon which relief can be granted.  Abbott further states

as follows:

**INTRODUCTION**

The essence of Plaintiff's claims against Defendant Abbott Laboratories ("Abbott") is

that Abbott failed to provide adequate warnings about the risk of lymphomas and other

malignant cancers allegedly associated with its drug, Humira.  Plaintiff alleges that Humira

caused him to develop chordoma, a rare type of malignant bone tumor, after he took the drug,

which his physician prescribed to treat Crohn's disease.  Plaintiff brings his warnings-based

claims despite the fact that, at all times during his treatment with Humira, Abbott's FDA-

approved warning labels expressly warned of a potential increased risk of malignancies.  For

example, the warning label in effect when Plaintiff was initially prescribed Humira contained the

following warnings, among others:

## 5  WARNINGS AND PRECAUTIONS

* * *

### 5.2  Malignancies

* * *

**In the controlled portions of clinical trials of all the TNF-blocking agents, more cases of lymphoma have been observed among patients receiving TNF blockers compared to control patients.**  In controlled trials in patients with rheumatoid arthritis, psoriatic arthritis, ankylosing spondylitis, Crohn's disease, and plaque psoriasis, 2 lymphomas were observed among 3853 HUMIRA-treated patients versus 1 among 2183 control patients. In combining the controlled and uncontrolled open-label portions of these clinical trials–with a median duration of approximately 2 years, including 6539 patients and over 16,000 patient-years of therapy, **the observed rate of lymphomas is approximately 0.11/100 patient-years.  This is approximately 3-fold higher than expected in the general population**.

February 21, 2008 Humira Label, Ex. 1, at 7 (emphasis added).[1]

Abbott respectfully requests that the Court dismiss Plaintiff's complaint for the following reasons.  **First**, Plaintiff's complaint is precisely the type of "shotgun pleading" long condemned by the Eleventh Circuit because they prejudice defendants by obscuring what doctrine is at issue, much less how to frame a proper response.

**Second**, Plaintiff's First and Second Causes of Action, for strict liability and negligence grounded in Abbott's purported failure to warn of the risk of cancer allegedly associated with Humira, should be dismissed because Plaintiff's core factual allegations are directly contradicted

---

[1] Also available at http://www.accessdata.fda.gov/drugsatfda_docs/label/2008/125057s114lbl.pdf.  The FDA-approved Humira labels and other official FDA documents are publicly available on the Food and Drug Administration's website, are appropriate for judicial notice, and do not convert this motion to dismiss into a motion for summary judgment.  *See, e.g., Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (district court's consideration of contract central to plaintiff's claim but not attached to complaint was appropriate on motion to dismiss); *see also Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (holding that the district court properly took judicial notice of public records, including an FDA letter, when granting a motion to dismiss); *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, 590 F. Supp. 2d 1282, 1286 (C.D. Cal. 2008) (granting request for judicial notice of publicly-available prescription drug labels because "the labels are documents not subject to reasonable dispute.").

by the Humira label in effect when Plaintiff took the drug.  Plaintiff alleges that Abbott did not warn about the risk of lymphoma and other cancers and that, had Abbott done so, Plaintiff's physician would not have prescribed Humira.  Yet every Humira label since the drug's introduction on the market has included explicit warnings about the possible association between Humira and lymphoma and other malignancies.  To the extent that Plaintiff purports to bring his strict liability and negligence causes of action under theories of design or marketing defect, they should be dismissed because he has alleged no factual allegations supporting either theory.

*Third*, Plaintiff's Third Cause of Action, for negligent misrepresentation, fails because he has not satisfied the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which applies to this claim.  Far from asserting the requisite "who, what, where, when, and how" of the alleged misrepresentation, he supports his claim with nothing more than legal conclusions, which are not to be credited even under the more relaxed pleading standard of Rule 8.

*Fourth*, Plaintiff's Fourth and Fifth Causes of Action, for breach of implied warranties, should be dismissed (1) because Plaintiff has not—and cannot—allege privity, an essential element of these claims under Florida law, and (2) for failure to provide the requisite notice of his claims.

For these reasons, Plaintiff's complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted.

## BACKGROUND

### I.    Plaintiff was Prescribed Humira by His Doctor.[2]

Plaintiff was diagnosed with Crohn's Disease in October 2007.  *See* Compl. ¶ 13.  In September 2008, he began receiving Humira.  *See id.* ¶ 14.  By November 2008, Plaintiff developed severe upper back, shoulder, and neck pain as well as numbness in his right arm.  *See id.* ¶ 15.  In March 2009, he underwent an MRI, which revealed a large mass tumor.  *See id.* ¶ 16.  Plaintiff was diagnosed with chordoma in April 2009.  *See id.* ¶ 17.  In June 2009, Plaintiff had two surgeries to remove the tumor.  *See id.* ¶ 18.  In February 2010, Plaintiff received radiation treatment.  *See id.* ¶ 19.

### II.    The Complaint Asserts Failure-to-Warn Product Liability Claims.

Plaintiff alleges that Abbott "delayed warning about lymphoma and other cancers . . . until early 2010" and, as a result, "[Plaintiff's] physician was not warned by Abbott about the high risk of lymphomas and other forms of malignant cancers."  *Id.* ¶¶ 12, 20.  Plaintiff asserts that "[i]f Abbott had issued an immediate warning of the risk of malignant cancers, Chapman's physician would have undoubtedly not prescribed Humira."  *Id.* ¶ 21.  Plaintiff asserts five causes of action on the basis of these allegations:  strict liability (*id*. ¶¶ 22-28), negligence (*id*. ¶¶ 29-39), negligent misrepresentation (*id*. ¶¶ 40-52), breach of warranty of fitness for a particular purpose (*id*. ¶¶ 53-56), and breach of warranty of merchantability (*id*. ¶¶ 57-60).

### III.    The FDA Approved Humira and Its Labeling.

The FDA initially approved Humira in late 2002 for the treatment of rheumatoid arthritis.  *See id*. ¶ 7.  Humira was approved by the FDA for the treatment of Crohn's disease in 2007.  *See id*.  At all relevant times, both Humira and its label had been subjected to stringent FDA review

---

[2] For purposes of this motion to dismiss only, the court "accept[s] as true all of the factual allegations in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Abbott expressly denies all inaccurate factual and/or legal claims made in the Complaint.

and had been found both safe and effective.  The FDA is the "expert Federal public health agency charged by Congress with ensuring that drugs are safe and effective" pursuant to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA"), and the Public Health Services Act, 42 U.S.C. § 201 *et seq*.  *See* 71 Fed. Reg. 3922, 3934 (Jan. 24, 2006).  The FDCA and its implementing regulations direct the FDA to "make[] approval decisions based not on an abstract estimation of [a drug's] safety and effectiveness, but rather on a ***comprehensive scientific evaluation of the product's risks and benefits*** . . . ." *Id.* (emphasis added).

As part of this scientific evaluation, the FDA undertakes a rigorous safety review that includes "a comprehensive evaluation of risk information adequate to support a factual and sufficient summary of the risk information in labeling."[3]  "The centerpiece of risk management for prescription drugs generally is the ***labeling*** which reflects thorough FDA review of the pertinent scientific evidence and communicates to health care practitioners the agency's formal, authoritative conclusions regarding the conditions under which the product can be used safely and effectively."  71 Fed. Reg. at 3934 (emphasis added).

After careful and rigorous scientific review, the FDA approved Humira for the treatment of rheumatoid arthritis in 2002 and for Crohn's Disease in 2007.  The FDA-approved Humira label in effect in September 2008 included the following detailed warning about the potential increased risk of cancer allegedly associated with Humira:

**5 WARNINGS AND PRECAUTIONS**

**5.2 Malignancies**

---

[3] *See* FDA, Good Review Practices, "Reviewer Guidance: Conducting a Clinical Safety Review of a New Product Application and Preparing a Report on the Review," Ex. 2 at App. 4 (Feb. 2005), *available at* http://www.fda.gov/downloads/Drugs/GuidanceComplianceRegulatory Information/Guidances/ucm072974.pdf.

In the controlled portions of clinical trials of some TNF-blocking agents, including HUMIRA, more cases of malignancies have been observed among patients receiving those TNF blockers compared to control patients. During the controlled portions of HUMIRA trials in patients with rheumatoid arthritis, psoriatic arthritis, ankylosing spondylitis, Crohn's disease, and plaque psoriasis, malignancies, other than lymphoma and non-melanoma (basal cell and squamous cell) skin cancer, were observed at a rate (95% confidence interval) of 0.6 (0.3, 1.0)/100 patient-years among 3853 HUMIRA-treated patients versus a rate of 0.4 (0.2, 1.0)/100 patient-years among 2183 control patients (median duration of treatment of 5.5 months for HUMIRA-treated patients and 3.9 months for control-treated patients). The size of the control group and limited duration of the controlled portions of studies precludes the ability to draw firm conclusions. In the controlled and uncontrolled open-label portions of the clinical trials of HUMIRA, the more frequently observed malignancies, other than lymphoma and non-melanoma skin cancer, were breast, colon, prostate, lung, and melanoma. These malignancies in HUMIRA-treated and control-treated patients were similar in type and number to what would be expected in the general population.  During the controlled portions of HUMIRA rheumatoid arthritis, psoriatic arthritis, ankylosing spondylitis, Crohn's disease, and plaque psoriasis trials, the rate (95% confidence interval) of non-melanoma (basal cell and squamous cell) skin cancers was 0.9 (0.57, 1.35)/100 patient-years among HUMIRA-treated patients and 0.3 (0.08, 0.80)/100 patient-years among control patients. The potential role of TNF blocking therapy in the development of malignancies is not known.

In the controlled portions of clinical trials of all the TNF-blocking agents, more cases of lymphoma have been observed among patients receiving TNF blockers compared to control patients. In controlled trials in patients with rheumatoid arthritis, psoriatic arthritis, ankylosing spondylitis, Crohn's disease, and plaque psoriasis, 2 lymphomas were observed among 3853 HUMIRA-treated patients versus 1 among 2183 control patients. In combining the controlled and uncontrolled open-label portions of these clinical trials with a median duration of approximately 2 years, including 6539 patients and over 16,000 patient-years of therapy, the observed rate of lymphomas is approximately 0.11/100 patient-years. This is approximately 3-fold higher than expected in the general population. Rates in clinical trials for HUMIRA cannot be compared to rates of clinical trials of other TNF blockers and may not predict the rates observed in a broader patient population. Patients with rheumatoid arthritis, particularly those with highly active disease, are at a higher risk for the development of lymphoma.

* * *

### 5.11 Immunosuppression

The possibility exists for TNF blocking agents, including HUMIRA, to affect host defenses against infections and malignancies since TNF mediates inflammation and modulates cellular immune responses.  In a study of 64 patients with rheumatoid arthritis treated with HUMIRA, there was no evidence of depression

of delayed-type hypersensitivity, depression of immunoglobulin levels, or change in enumeration of effector T- and B-cells and NK-cells, monocyte/macrophages, and neutrophils.  The impact of treatment with HUMIRA on the development and course of malignancies, as well as active and/or chronic infections, is not fully understood *[see Warnings and Precautions (5.1, 5.2) and Adverse Reactions (6.1)]*.  The safety and efficacy of HUMIRA in patients with immunosuppression have not been evaluated.

* * *

## 6  ADVERSE REACTIONS

### 6.1  Clinical Studies Experience
The most serious adverse reactions were *[see Warnings and Precautions (5)]*:
• Serious Infections
• Neurologic Reactions
• Malignancies

* * *

<u>*Malignancies*</u>

More cases of malignancy have been observed in HUMIRA-treated patients compared to control-treated patients in clinical trials *[see Warnings and Precautions (5.2)]*.

* * *

<u>*Other Adverse Reactions*</u>

Other infrequent serious adverse reactions occurring at an incidence of less than 5% in rheumatoid arthritis patients treated with HUMIRA were:

*Neoplasia*:    Adenoma, carcinomas such as breast, gastrointestinal, skin, urogenital, and others; lymphoma and melanoma.

* * *

**What are the possible side effects with HUMIRA?**

Serious side effects, which sometimes lead to death, have happened in patients taking HUMIRA, including:

* * *

• **Certain types of Cancer**.

  • There have been cases of certain kinds of cancer, in patients taking HUMIRA or other TNF blockers.

February 21, 2008 Humira Label, Ex. 1 at 7-8, 10-11, 13-14, 37 (footnotes omitted, emphases in original).

The FDA's public records confirm the agency's knowledge and careful consideration of the potential increased risk of various types of cancer associated with Humira use. The label in effect in September 2008 reflected the FDA's measured, thorough analysis of the risks and benefits of Humira based on the scientific data available at the time.

## LEGAL STANDARD

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), the complaint must "state[] a plausible claim for relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 556 (2007)). A claim is "plausible" only if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. In looking at a complaint's "factual content," a court should look at a complaint's well-pled factual allegations but should not accept either "a legal conclusion couched as a factual allegation" or "[t]hreadbare recitals of the elements of a cause of action, supported by merely conclusory statements . . . ." *Id.* at 1949-50. If the allegations show only "the mere possibility of misconduct," there is no plausible claim for relief and the complaint must be dismissed. *Id.* at 1950.

## ARGUMENT

### I.     Plaintiff's Complaint Represents an Improper "Shotgun Pleading."

Plaintiff's complaint should be dismissed because it is precisely the type of impermissible "shotgun pleading" repeatedly condemned by the 11th Circuit. *See, e.g.*, *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979 n.54 (11th Cir. 2008) ("[S]ince 1985 we have explicitly condemned shotgun pleadings upward of fifty times."); *see also Jovine v. Abbott Laboratories, Inc.*, — F. Supp. 2d — , No. 11-CV-80111, 2011 WL 1376029, at *2 (S.D. Fla. Apr. 12, 2011)

(dismissing complaint on this basis).  A typical shotgun complaint "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions."  *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002).  Such pleadings require defendants and courts to "sift each count" for the pertinent allegations and "disregard the allegations that only pertain to the incorporated counts."  *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006).

Plaintiff's complaint is a quintessential shotgun pleading in that each cause of action inappropriately incorporates by reference all the prior paragraphs of the complaint—including the allegations in the previous counts.  *See* Compl. ¶¶ 22, 29, 40, 53, 57; *see also MacMorris v. Wyeth, Inc.*, No. 2:04CV596FTM-29DNF, 2005 WL 1528626, at *1 (M.D. Fla. June 27, 2005) ("[A] party may not incorporate all allegations of each count in every successive count.").  Further, in some places, Plaintiff alleges inconsistent theories within the same paragraph.  For example, the strict liability count alleges "negligence, gross negligence, [and] recklessness" on the part of Abbott (Compl. ¶ 25)—assertions which have no place in a cause of action for strict liability.  Finally, Plaintiff asserts numerous possible causes of action with no factual support, as in the First Cause of Action, where Plaintiff lists every theory contained in the Restatement (Second) of Torts but factual allegations supporting almost none of them.  *See id.* ¶ 24.  Plaintiff's complaint "prevents defendant[] from understanding the nature of [its] alleged wrongdoing" and fails to provide a "short and plain statement" showing he is entitled to relief as required by Fed. R. Civ. P. 8.  *Bailey v. Janssen Pharmaceutica, Inc.*, No. 06-80702-CIV-RYSKAMP/ VITUNAC, 2006 WL 3665417, at *2 (S.D. Fla. Nov. 14, 2006), *aff'd* 536 F.3d 1202 (11th Cir. 2008).  Plaintiff's complaint should be dismissed.

## II.    Stripped of the Allegations Directly Contradicted by the Humira Label, Plaintiff's Complaint Fails to Plead Facts Demonstrating a Plausible Ground for Relief.

Plaintiff's First and Second Causes of Action, for strict liability and negligence, should be dismissed because the few factual allegations underlying them are directly contradicted by the Humira label in effect when Plaintiff took the drug;[4] Plaintiff has, therefore, failed to state a claim for which relief can be granted.

To make out a strict liability or negligent failure-to-warn claim, Plaintiff must show "1) that the warnings accompanying the item were inadequate; 2) that the inadequacy of the warnings proximately caused Plaintiff's injury; and 3) that Plaintiff in fact suffered an injury by using the product." *Colville v. Pharmacia & Upjohn Co.*, 565 F. Supp. 2d 1314, 1320 (N.D. Fla. 2008). Under the learned intermediary doctrine, a prescription drug manufacturer's "duty to warn of the drug's dangerous side effects is directed to the physician rather than the patient." *Upjohn Co. v. MacMurdo*, 562 So. 2d 680, 683 (Fla. 1990). Failure-to-warn claims can succeed under the doctrine "only if the warnings were deficient with respect to the prescribing physician and the physician relied upon those warnings in prescribing the medication." *Fields v. Mylan Pharm., Inc.*, 751 F. Supp. 2d 1260, 1263 (N.D. Fla. 2009); *see also Felix v. Hoffmann-LaRoche, Inc.*, 540 So.2d 102, 104 (Fla. 1989) (proximate cause not shown where physician had prior knowledge of the alleged risk).

---

[4] To the extent that Plaintiff attempts to rely on a design defect or manufacturing defect theory to support his strict liability and negligence causes of action, he has wholly failed to state a claim. Plaintiff's allegations relating to these two theories are nothing more than unsupported legal conclusions; rather than allege facts, Plaintiff recites every theory provided for in the Restatement (Second) of Torts (*see* Compl. ¶ 24) and the states the conclusion that Abbott was "negligent in the preparation, design, research, development [and] manufacturing" of Humira (Compl. ¶ 37). Plaintiff may not rely solely on these legal conclusions to state a claim for strict liability or negligence based on a design or manufacturing defect. *Iqbal*, 129 S. Ct. at 1949-50. To the extent he asserts that Abbott is liable under any of these theories, his strict liability and negligence causes of action should be dismissed.

The Humira labels govern here and establish that Plaintiff's allegations that Abbott did not warn about lymphoma and other cancers or delayed including such warnings in the Humira label cannot stand; as a result, Plaintiff has failed to adequately allege that the Humira warnings were inadequate.[5]  Specifically, Plaintiff alleges:

> "Abbott delayed warning about lymphoma and other cancers. Indeed even when the FDA exercised its legal authority to 'require' warnings within 30 days, Abbott stalled until early 2010, after Chapman received his first injections and nearly died." Compl. ¶ 12.

> "At the time Chapman started taking Humira, his physician was not warned by Abbott about the high risk of lymphomas and other forms of malignant cancers.  Without this information, neither Chapman nor his physician were capable of conducting a proper risk/benefit analysis."  *Id.* ¶ 20.

> "If Abbott had issued an immediate warning of the risk of malignant cancers, Chapman's physician would have undoubtedly not prescribed Humira." *Id.* ¶ 21.

The crux of these allegations is that Abbott did not warn about lymphoma and other cancers until 2010 and that if Abbott had included a lymphoma warning in its label earlier, Plaintiff's physician would not have prescribed Humira.  But the operative Humira label— indeed, every Humira label—expressly warned about lymphomas and other malignancies.  *See*

---

[5] Where allegations in a complaint are contradicted by exhibits or judicially noticeable documents, courts do not credit the allegations.  *See Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) ("It is the law in this Circuit that when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." (internal quotation marks omitted)); *see also In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001) (court need not "accept as truth" pleadings that are contradicted by documents upon which the pleadings rely, or by facts of which the court may take judicial notice); *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1231 n.2 (S.D. Fla. 2007) (refusing to credit plaintiffs' allegations regarding Pfizer marketing campaign where allegations were directly contradicted by the advertisements plaintiffs included with their complaint).

*supra* Background Section III.[6]  Plaintiff's complaint contains no factual allegations that the warnings that were provided were inadequate.[7]  As a result, the complaint contains no factual allegations regarding the warning's adequacy—only allegations contradicted by the label and legal conclusions, neither of which may be credited.  *See Iqbal*, 129 S. Ct. at 1949-50; *see also Brown v. S. Fla. Fishing Extreme, Inc.*, No. 08-20678-CIV, 2008 WL 2597938, at *2 (S.D. Fla. June 27, 2008) (dismissing complaint where conclusory allegations contradicted by complaint's exhibits and public records provided by defendants).  Plaintiff's complaint therefore should be dismissed under Rule 12(b)(6).

Further, Plaintiff has failed to adequately allege proximate causation, a necessary element of his claims.  *See, e.g., Colville*, 565 F. Supp. 2d at 1320 (requiring showing in failure-to-warn case that "inadequacy of the warnings proximately caused Plaintiff's injury").  Plaintiff's allegations that "his physician was not warned" and, if he had been, he "would have undoubtedly not prescribed Humira" (Compl. ¶¶ 20-21) are based on Plaintiff's assertion, contradicted by the Humira labels, that Abbott did not warn about lymphoma and other cancers until 2010.[8]  *See supra*.  Stripped of these assertions, there is no basis for his allegation that his physician would not have prescribed Humira had Abbott provided a different warning.  Plaintiff's First and

---

[6] The Humira labels are available at http://www.accessdata.fda.gov/scripts/cder/drugsatfda/index.cfm?fuseaction=Search.Label_Appr ovalHistory.

[7] The recitations that the warnings were inadequate in the paragraphs outlining the causes of action (*see* Compl. ¶¶ 24, 34-37, 41) are "legal conclusion[s] couched as . . . factual allegation[s]" and "[t]hreadbare recitals of the elements of a cause of action, supported by merely conclusory statements" and therefore should not be accepted as true.  *Iqbal*, 129 S. Ct. at 1949-50.

[8] Plaintiff's remaining allegations that he was harmed "[a]s a direct and proximate result of" Abbott's actions (Compl. ¶¶ 25, 39) are mere legal conclusions that are insufficient to state a plausible claim for relief.  *See Iqbal*, 129 S. Ct. at 1949-50.

Second Causes of Action therefore should be dismissed for failure to adequately allege proximate causation.

**III.    Plaintiff Has Failed To Plead His Negligent Misrepresentation Claim with the Specificity Required by Fed. R. Civ. P. 9(b).**

Plaintiff's Third Cause of Action, for negligent misrepresentation, should be dismissed because Plaintiff has failed to plead this claim with the specificity required under Rule 9(b).[9] *See, e.g.*, *Pruco Life Ins. Co. v. Brasner*, No. 10-80804-CIV, 2011 WL 2669651, at *4 (S.D. Fla. July 7, 2011) (applying Rule 9(b) to negligent misrepresentation claim).  Under this standard, Plaintiff must plead, among other things, precisely what statements were made, their content, who was responsible for making them, the time and place of each statement, and the manner in which they misled the plaintiff.  *See Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202  (11th Cir. 2001); *see also Jovine*, 2011 WL 1376029, at *5 n.3 and accompanying text (dismissing negligent misrepresentation claim where plaintiff alleged exposure to packaging but not that he read or relied on it).

Plaintiff's allegations in support of his negligent misrepresentation claim do not satisfy Rule 9(b).  He makes no factual allegations regarding any representations by Abbott, only conclusory statements that Abbott misrepresented information regarding the safety and efficacy of Humira to Plaintiff's prescribing physician and to Chapman through direct-to-consumer advertising.  *See* Compl. ¶¶ 42-45.  Plaintiff does not allege what statements constitute misrepresentations by Abbott, when he or his prescribing physician saw them, or the manner in

---

[9] Plaintiff's negligent misrepresentation claim should be dismissed for the additional reason that, as with his strict liability and negligence causes of action, the underlying factual allegations regarding the adequacy of the Humira warning (*see* Compl. pp 42-45) are contradicted by the Humira labels so should not be credited by the Court.  *See supra* Section II.  Stripped of these contradicted allegations, Plaintiff is left with nothing more than legal conclusions, which are insufficient to state a plausible claim for relief.  *See id.*

which any alleged misrepresentation misled him or his prescribing physician; his claim therefore

should be dismissed.  *See, e.g.*, *Jovine*, 2011 WL 1376029, at *8 n.9 (Rule 9(b) requirements not

satisfied where plaintiff failed to quote packaging or allege when or where he saw it); *NCR*

*Credit Corp. v. Reptron Elecs., Inc.*, 155 F.R.D. 690, 693 (M.D. Fla. 1994) (dismissing claim

under Rule 9(b) for failure to allege a specific date, time, or name or to quote any misstatements

made by defendant).

### IV.    Plaintiff's Implied Warranty Claims Should Be Dismissed For Lack of Privity and Because Plaintiff Failed to Provide the Required Notice of His Claim.

Plaintiff's Fourth and Fifth Causes of Action, for breach of implied warranties, should be

dismissed because Plaintiff has failed to allege privity with Abbott or to provide notice of his

claims as required by Florida law.[10]  The Florida Supreme Court "abolished the no-privity,

breach of implied warranty cause of action for personal injury upon its adoption of the doctrine

of strict liability in tort."  *Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37, 39 (Fla. 1988) (implied

warranty claims may only proceed where privity of contract is shown).  This principle has been

repeatedly reaffirmed by every Florida District Court of Appeal.  *See, e.g.*, *Weiss v. Johansen*,

898 So. 2d 1009, 1012 (Fla. 4th DCA 2005) ("[I]n order to recover for the breach of a warranty

either express or implied, the plaintiff must be in privity of contract with the defendant.");

---

[10] Plaintiff's claim for breach of the implied warranty of fitness for a particular purpose should be dismissed for the additional reason that it alleges that Abbott warranted that Humira was fit for "its intended use under normal conditions" (Compl. ¶ 54), not a "particular purpose." *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1100 (11th Cir. 1983) ("A 'particular purpose' differs from an 'ordinary purpose' in that it envisages a specific use by the buyer which is peculiar to the nature of his business"); *see also McGraw v. Fleetwood Enters., Inc.*, No. 6:07-cv-234-Orl-28DAB, 2007 WL 2225976, at *2 (M.D. Fla. Aug. 1 2007) (dismissing implied warranty claim for failure to identify particular purpose for which the product was not fit); *Fred's Excavating & Crane Serv., Inc. v. Continental Ins. Co.*, 340 So. 2d 1220 (Fla. 4th DCA 1976) (affirming dismissal on same ground). Further, Plaintiff cannot make out this claim in light of his allegations that he used Humira to treat his Crohn's disease—an FDA-approved and therefore "ordinary use" of Humira.

*Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. 5th DCA 1998) (same); *Elizabeth N. v. Riverside Group, Inc.*, 585 So. 2d 376, 378 (Fla. 1st DCA 1991) (reasoning that "[a] warranty, whether express or implied, is fundamentally a contract.  A contract cause of action requires privity."); *Intergraph Corp. v. Stearman*, 555 So. 2d 1282, 1283 (Fla. 2nd DCA 1990) ("Privity is required in order to recover damages from the seller of a product for breach of express or implied warranties."); *Cedars of Lebanon Hosp. Corp. v. European X-Ray Distribs., Inc.*, 444 So. 2d 1068, 1072 n.4 (Fla. 3rd DCA 1984) ("It is the direct contacts which create the express and implied warranties under" Florida law.).  Plaintiff has not alleged that he was in privity with Defendant; he concedes that Humira was prescribed by his physician.  *See* Compl. ¶ 21. Accordingly dismissal is warranted.  *See Bailey*, 2006 WL 3665417, at *5 (dismissing implied warranty claim with prejudice where plaintiff admitted that drug was prescribed by his physician).

Further, Plaintiff is barred from recovering under an implied warranty theory because he failed to provide Abbott the required notice of the alleged breach.  *See* Fla. Stat. Ann. § 672.607(3)(a) (2011) (buyer must provide notice within a reasonable time after discovery of breach); *see also Royal Typewriter*, 719 F.2d at 1102 (notice is a "condition precedent to recovery for breach of warranty").  Notice must be alleged in the complaint in order to "properly plead a cause of action for breach of warranties under the Florida Uniform Commercial Code [("UCC")] . . . ."  *Dunham-Bush, Inc. v. Thermo-Air Serv., Inc.*, 351 So. 2d 351, 353 (Fla. 4th DCA 1977); *see also Taylor v. Am. Honda Motor Co.*, 555 F. Supp. 59, 63-64 (M.D. Fla. 1982) (to state implied warranty cause of action, buyer "must allege compliance with §

672.607(3)(a)").  Plaintiff has not—and cannot—allege that he provided the requisite notice, thus

barring relief.[11]

## CONCLUSION

For the foregoing reasons, Defendant Abbott Laboratories respectfully requests that the

Court grant its motion to dismiss Plaintiff's complaint in its entirety.

s/*Penelope A. Dixon*

Penelope A. Dixon (FBN 0335680)
CARLTON FIELDS, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Boulevard (33607)
Post Office Box 3239
Tampa, Florida 33601
Telephone:(813) 223-7000
Facsimile: (813) 229-4133
Email:      pdixon@carltonfields.com
Attorneys for Abbott Laboratories

## CERTIFICATE OF SERVICE

I CERTIFY that on the 22nd day of November, 2011, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic

filing to Stanley P. Aronson at Aronsonlaw@aol.com.

By:    s/ *Penelope A. Dixon*

Penelope A. Dixon

---

[11] Other jurisdictions construing identical UCC provisions have held that a complaint may not serve as the requisite notice.  *See, e.g.*, *Am. Federation of State County & Mun. Employees v. Ortho-McNeil Janssen Pharm.*, No. 08-cv-5904, 2010 WL 891150, at *6 (E.D. Pa. Mar. 11, 2010) ("[T]he purpose of notification under § 2607(c) is to allow the seller an opportunity to resolve the dispute regarding an alleged breach before the buyer initiates a lawsuit."); *In re Morweld Steel Prods. Corp.*, 8 B.R. 946, 951-52 (Bankr. W.D. Mich. 1981) (serving notice "an essential condition precedent to the right to bring the action"—buyer who fails to do so "has lost the right to his remedy").  This Court should similarly hold that service of a complaint does not constitute compliance with the statute because a contrary holding would frustrate the Florida legislature's fundamental purpose in adopting the requirement, which was intended to "open[] the way for formal settlement through negotiation."  Fla. Stat. Ann. § 672.607 cmt. 4 (2011).